

# Fourth Court of Appeals

## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-17-00119-CR

Jasmine **SIMMS**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 186th Judicial District Court, Bexar County, Texas
Trial Court No. 2014CR10245
Honorable Jefferson Moore, Judge Presiding

Opinion by:    Rebeca C. Martinez, Justice

Sitting:    Karen Angelini, Justice
Marialyn Barnard, Justice
Rebeca C. Martinez, Justice

Delivered and Filed:  March 28, 2018

AFFIRMED

Jasmine Simms appeals her conviction and sentence for trafficking a child and compelling prostitution of a child.  Simms raises a single issue on appeal, asserting the trial court abused its discretion in failing to hold a hearing on her motion for new trial alleging her trial counsel rendered ineffective assistance.  We overrule Simms's issue and affirm the trial court's judgment.

## BACKGROUND

Simms was initially arrested for a disturbance at a Shell gas station.  K.D., a fourteen-year old female, was with Simms and was also taken into custody.  K.D. had run away from a shelter

in New Braunfels and there was an outstanding missing child warrant. K.D. told police that she first met Simms after she ran away and returned to the apartment complex across from her high school in San Antonio. K.D. met a man with the nickname "Mickey" at a bus stop and he took her to an apartment where "Black" lived. Simms was present at the apartment. After drinking two alcoholic drinks, K.D. went into a back room where she had sex with "Mickey" and "Black." Afterwards, Mickey stated to Black and Simms that "they were going to make some money off of [K.D.]." Mickey told Simms to "fix up" and "post" K.D., and instructed K.D. to "just ride with Jasmine."

Simms took K.D. to a Motel 6 room. Simms took photos of K.D. and created a web ad for her on Back Page. K.D. testified that Simms received the phone calls and text messages that the Back Page ad generated and arranged for the men to come to the Motel 6 room to have sex with K.D. According to K.D., a total of four men came to the motel room in response to the Back Page ad and two engaged in sex acts with her for money. K.D. testified these encounters first occurred at the motel, "then the corner store, then the truck stop and then the car." K.D. also testified that it was Simms who explained to her that "escorting" meant having "sex for money." Simms told her the prices charged for various sexual services and explained the meaning of the sex acts. Simms decided that K.D. would go by the nickname "Lady Fame" or "Famous." K.D. explained that Back Page is "basically a prostitution website and it has like pictures of people and the number." K.D. testified the phone number listed in the ad belonged to Simms. The cell phone taken from Simms at the time of her arrest matched the phone number used in the Back Page ad. In addition to K.D.'s testimony at trial, a report of the Cellbrite data extraction performed on Simms's phone was admitted into evidence and showed text messages between "Jazzy" and "Mickey" about "posting her," getting "a room," and other explicit text messages between "Jazzy"

and "Lady Famous" and individuals requesting various sexual services for money; K.D.'s real name appears in some of the text messages to Mickey.

Simms was convicted on three counts of trafficking a child with intent that the child engage in forced labor or services, and three counts of compelling prostitution of a child. *See* TEX. PENAL CODE ANN. §§ 20A.02(a)(5), 43.05(a)(2) (West Supp. 2017). The trial court sentenced Simms to 30 years of imprisonment on each count, with the sentences to run concurrently.

Simms timely filed a verified motion for new trial asserting she received ineffective assistance because her trial counsel failed to conduct an independent investigation of the facts, seek out and interview potential witnesses, and move for a continuance during trial when the SANE examiner was not called as a witness by the State. Specifically, Simms asserts her counsel should have tracked down "Mickey" and the other individuals associated with the phone numbers and text messages listed on the State's cell phone extraction report, and should have interviewed those individuals as well as the Motel 6 employees mentioned in the police reports and a friend of Simms who was familiar with "her situation." In addition, Simms states her trial counsel relied on the State to call the SANE examiner as a witness, and should have moved for a continuance to obtain the witness's presence at trial because he would have testified to statements by K.D. that were inconsistent with her trial testimony. Finally, Simms asserts her trial counsel was ineffective during the punishment phase by failing to investigate and present mitigating evidence in the form of Simms's medical records and good character evidence from a family member. The motion for new trial recites that trial counsel "has affirmed the same [ineffective assistance] and agreed to make himself available to testify at hearing [sic] on the matter." However, no affidavit from trial counsel was attached to the motion.

Simms attached two affidavits to her motion for new trial. Both affidavits were made by Simms's investigator, Jerry Potter. In the affidavits, Potter summarizes his post-trial interviews

with two potential defense witnesses. In the affidavit attached as Exhibit 4, Potter states that he interviewed Charles Armentrout after identifying him using a phone number shown on the State's cell phone extraction report. Potter avers that Armentrout "admitted to using Backpage and having met with Jasmine Simms in the past," but stated he was "never propositioned by Jasmine Simms, or anyone to have any sexual contact with an underage girl" and "would have ran [sic] away from it." Finally, Potter states that Armentrout denied meeting anyone named "K.D." and stated he did not remember Simms ever mentioning that name to him. In Potter's affidavit describing his interview with potential witness Jennifer Reeves (Exhibit 5), he recites that Reeves is a childhood friend of Simms and also knows an individual named Mickey. Potter avers that Reeves "gave information about the situation that was consistent with the story Jasmine gave to the police" and would have testified to "information concerning Jasmine's situation and character." No details were provided with respect to such "information." In both affidavits, Potter avers that Armentrout and Reeves stated they would have been willing and available to testify at Simms's trial if asked, and would have testified under oath to the information recited.

In addition to the two affidavits, Simms's motion contained the following exhibits: (1) the indictment; (2) trial court docket sheet; (3) excerpts from the State's "Phone Examination Report Properties" containing phone numbers and text messages, which was admitted at trial; (4) medical records for Simms showing treatment for ADHD; (5) an article on ADHD; and (6) an email from Simms's uncle describing her good character. The trial court signed an order denying a hearing on the motion for new trial, and signed a separate order denying the motion. Simms timely appealed.

### ANALYSIS

There is no absolute right to a hearing on a motion for new trial. *Smith v. State*, 286 S.W.3d 333, 338 (Tex. Crim. App. 2009). The purposes of a hearing on a motion for new trial are to decide

whether the case should be retried and to "prepare a record for presenting issues on appeal in the event the motion is denied." *Id.* A hearing is only required when the motion raises matters which cannot be determined from the record. *Id.* However, even a defendant who raises matters not determinable from the record is not entitled to a hearing on his motion for new trial unless he also "establishes the existence of 'reasonable grounds' showing that the defendant 'could be entitled to relief.'" *Id.* at 339 (noting this requirement is imposed to avoid fishing expeditions at a motion for new trial hearing). Therefore, the motion for new trial must be supported by an affidavit from the defendant or another person specifically setting out the factual basis for the claim to be entitled to a hearing. *Id.* The affidavit need not establish a *prima facie* case, or even "'reflect every component legally required to establish' relief." *Id.* (quoting *Reyes v. State*, 849 S.W.2d 812, 816 (Tex. Crim. App. 1993)). An affidavit is sufficient "if a fair reading of it gives rise to reasonable grounds in support of the claim." *Id.* An affidavit that is conclusory or that is unsupported by facts is not sufficient and does not warrant a hearing on the motion for new trial. *Smith*, 286 S.W.3d at 339.

*Standard of Review* We apply an abuse of discretion standard in reviewing a trial court's denial of a hearing on a motion for new trial. *Id.* Our review for abuse of discretion is "limited to the trial judge's determination of whether the defendant has raised grounds that are both undeterminable from the record and reasonable, meaning they could entitle the defendant to relief." *Id.* at 340. "This is because the trial judge's discretion extends only to deciding whether these two requirements are satisfied." *Id.* Therefore, if a trial court concludes the defendant has met the two criteria, it has no discretion to deny a hearing, and abuses its discretion by doing so. *Id.*; *Hobbs v. State*, 298 S.W.3d 193, 200 (Tex. Crim. App. 2009).

Simms asserts that to establish such an abuse of discretion by the trial court, she need only show that her motion for new trial and affidavits "allege[d] sufficient facts that show reasonable

grounds to demonstrate that [s]he could prevail," and that her motion "need not plead a prima facie case" of ineffective assistance. *See Reyes*, 849 S.W.2d at 816. Simms rejects the State's argument that her motion for new trial and affidavits must be sufficient to "establish that she [could][1] have been successful under both prongs of *Strickland*." *See Strickland v. Washington*, 466 U.S. 668, 687 (1984) (stating the two-pronged test for ineffective assistance of counsel). Relying on *Reyes*, Simms contends that the appellate court does not proceed to analyze the merits of her allegations under the two *Strickland* prongs at this stage, but merely determines whether she has established "reasonable grounds" showing she could be entitled to relief. *See Reyes*, 849 S.W.2d at 816 ("the affidavit is not required to 'reflect every component legally required to establish' relief, but the motion for new trial or affidavit must reflect that reasonable grounds exist for holding that such relief could be granted").

However, in *Smith* the court clarified that for a defendant to demonstrate "reasonable grounds for relief" in a motion for new trial alleging ineffective assistance of counsel, he must establish both prongs of the *Strickland* test. *Smith*, 286 S.W.3d at 335. The court reconfirmed that the defendant "does not have to plead a *prima facie* case," but stated that he must "at least allege facts that show reasonable grounds to believe that he *could* prevail under *both* prongs of the test for ineffective assistance of counsel under *Strickland*." *Id.* at 338. The two prongs of *Strickland* are that (1) trial counsel rendered deficient performance and (2) it prejudiced the defense. *Smith*, 286 S.W.3d at 340 (citing *Strickland*, 466 U.S. at 687). To establish deficiency, the defendant must prove by a preponderance of the evidence that his attorney's performance "objectively fell below the standard of professional norms." *Id.* (citing *Strickland*, 466 U.S. at 687). To prove prejudice, the defendant must show "there is a reasonable probability that, but for his counsel's

---

[1] In its brief, the State mistakenly uses the word "would" instead of "could" in stating the applicable standard. *See Smith*, 286 S.W.3d at 339; *see also Reyes*, 849 S.W.2d at 816.

unprofessional errors, the result of the proceeding would have been different". *Id.* (citing *Strickland*, 466 U.S. at 694).

Therefore, in determining whether Simms was entitled to a hearing on her motion for new trial, we must decide if Simms's motion and affidavits raised a matter not determinable from the record, and alleged "sufficient facts from which a trial court could reasonably conclude both that counsel failed to act as a reasonably competent attorney and that, but for counsel's failure, there is a reasonable likelihood that the outcome of this trial would have been different." *Id.* at 340-41.

*Application*

As listed above, Simms's motion alleged ineffective assistance during the guilt-innocence phase because her trial counsel failed to independently investigate the facts and interview potential witnesses. Her motion lists three potential witnesses by name, a Back Page customer Charles Armentrout, a childhood friend Jessica Reeves, and the SANE examiner Edward Russell, along with unnamed employees from the Motel 6, and asserts that trial counsel could easily have tracked them down, and interviewed and/or called them as potential witnesses. Simms also argues counsel could have located other customers from the State's report of text messages and/or calls received by Simms. With respect to the punishment phase, Simms asserts that good character evidence and medical evidence showing she has ADHD, Crohn's disease, and depression should have been presented as mitigating evidence.

(1) Matters not Determinable from the Record. In *Smith*, the court recognized that the trial record will generally be insufficient to show counsel's performance was deficient or to show prejudice under *Strickland*, and held those matters were "not determinable from the record" in that case. *Smith*, 286 S.W.3d at 341. Because Smith's ineffective assistance grounds were not determinable from the record, the court proceeded to the next step to determine whether Smith's motion and affidavit established "reasonable grounds" that *could* entitle him to relief by alleging

facts in support of both *Strickland* prongs. *Id.* Here, Simms's allegations of ineffective assistance based on counsel's failure to investigate and interview witnesses are similarly not determinable from the trial record; therefore, we proceed to decide whether her motion and affidavits allege "facts that would reasonably show that [her] counsel's representation fell below the standard of professional norms <u>and</u> that there is a reasonable probability that, but for [her] counsel's conduct, the result of the proceeding would have been different." *Id.* (emphasis added).

(2) <u>Reasonable Grounds Showing Simms Could Prevail on Both *Strickland* Prongs</u>.

We may assume, without deciding, that Simms established reasonable grounds to show her trial counsel's omissions amounted to deficient performance, and proceed to an analysis of prejudice under *Strickland. See id.* at 342 (court assumed existence of deficiencies, and focused on prejudice prong in determining right to a hearing). In doing so, we examine Simms's motion and supporting affidavits to determine whether she alleged sufficient facts to establish reasonable grounds showing she could prevail on the prejudice prong of *Strickland*, i.e., that there is a reasonable probability that, but for counsel's conduct, the outcome of her trial would have been different. *See id.* at 341.

As noted, Simms supported her motion for new trial with two affidavits by her defense investigator describing his post-trial interviews with potential witnesses Armentrout and Reeves. Neither witness provided their own affidavit. The investigator states in the first affidavit (Exhibit 4) that he located Armentrout through a phone number listed on the cell phone report generated by the State. The affidavit states Armentrout admitted using the Back Page ad and meeting with Simms,[2] but stated that Simms never proposed that he engage in sexual contact with an underage girl and he did not meet an underage girl with K.D.'s name. Simms argues that this testimony by

---

[2] In her motion for new trial, Simms asserts the affidavit states that Armentrout told the investigator "he did not remember Jasmine," but the affidavit does not contain such a statement.

Armentrout would have directly rebutted the State's theory that Simms was using the phone number listed in the posting and the text messages to compel prostitution of a minor. Simms also states in her motion that "[f]inding one individual who rebuts the State's theory creates a reasonable probability there are more individuals like Charles [Armentrout]." Simms asserts that such testimony by Armentrout and potentially by other Back Page customers presents a reasonable probability the outcome of her trial would have been different.

We disagree. Armentrout's phone number was only one of several phone numbers that sent text messages or calls to Simms's phone soliciting sex for money in response to the Back Page posting. His statement to the investigator that he did not meet an underage girl or anyone named "K.D.," even if taken at face value, does not prove that another customer did not meet with and/or engage in sexual contact with an underage girl, namely K.D. In addition, if Armentrout had testified at trial, the jury would have assessed the credibility of his testimony and weighed it against K.D.'s testimony and the rest of the State's evidence. Simms's assertion that other customers would probably have testified the same as Armentrout is not based on any facts and is speculative and conclusory. The investigator does not aver that he located and contacted any other customer who sent a text message to Simms's phone. The affidavit summarizing the information Armentrout would have provided fails to establish reasonable grounds to show Simms could have shown prejudice from counsel's failure to locate him and call him as a defense witness at trial. *See id.*

The second affidavit made by Simms's investigator (Exhibit 5) briefly summarizes his interview with potential witness Jennifer Reeves, a friend of Simms. The affidavit states that Reeves and Simms are childhood friends, Reeves also knows Mickey, and that Reeves had "information concerning Jasmine's situation and character." However, the affidavit does not specify the nature of the "information" or the "situation." The affidavit goes on to state the

investigator's opinion that Reeves's testimony would have been "consistent" with the story Simms told the police, but fails to include any particular facts or details showing the content of Reeves's testimony or in what manner it would have been consistent with Simms's statements to police. This affidavit fails to provide any specific facts and is conclusory; therefore, it does not establish reasonable grounds to show Simms could have shown prejudice from counsel's failure to call Reeves as a witness at trial. *See id.*

In addition, Simms made other allegations in her verified motion for new trial which are not supported by accompanying affidavits. Simms alleges that her trial counsel was deficient in failing to interview and call as witnesses the unnamed Motel 6 employees mentioned in the police reports. However, Simms also acknowledges that, during cross-examination by her counsel, a State's witness testified that he interviewed the Motel 6 employees and they did not recognize Simms but did recognize "Mickey" and "Black." Thus, the jury heard and considered that testimony. Simms's motion does not state any facts detailing what additional evidence, if any, the Motel 6 employees would have provided and how it would have been beneficial to her defense or changed the outcome of her trial.

Simms's motion also states that she was prejudiced by her counsel's failure to subpoena Edward Russell, the forensic nurse who performed the SANE exam, as a defense witness, and failure to move for a continuance when the State elected not to call Russell as a witness. Simms contends Russell's testimony would have been beneficial because he documented statements by K.D. that were "inconsistent" with her trial testimony, thereby creating "credibility issues" for K.D. However, Simms does not provide any factual details about the statements K.D. made to Russell or explain how the statements were inconsistent with her trial testimony. No affidavit from Russell was attached in support of this allegation. In addition, the SANE report was

introduced into evidence by defense counsel, so the jury was able to compare the documented statements to K.D.'s trial testimony.[3]

Finally, Simms's motion asserts her trial counsel was deficient during the punishment phase by failing to investigate and present mitigating evidence in the form of Simms's medical records and testimony by a family member as to her good character. Simms attached only a copy of an email (Exhibit 8) from the family member, not a sworn statement. With respect to the medical evidence, Simms attached a copy of her medical records (Exhibit 6) showing she suffers from ADHD, Crohn's disease and depression, and an article discussing the effects of ADHD (Exhibit 7). No affidavit from a medical doctor or other healthcare professional was included. Simms's motion does not describe how or why her medical conditions would have mitigated her punishment on these particular offenses. Simms merely makes a conclusory statement that the medical evidence and good character testimony from a family member would have caused a different outcome at punishment, i.e., a lesser sentence.

At sentencing, the trial court explained its reasons for sentencing Simms to more years than the State requested by stating,

> [t]he evidence in my opinion was also very clear that you were involved in all this . . . the reason that I've given you a 30-year sentence is that at some point you're going to parole out. I want you in some sort of institutionalized supervision until you're almost 60 years old. I - - just the - - the evidence - - and the occurrences that happened in this case are very disturbing and you've got your own young children, I took that into consideration, too. But I'm afraid for those children because you had a child that you got involved with, you did horrible things to this young lady, and I can't get those images and such out of my brain of what was going on in that case. And you, in my opinion, were totally involved in this entire episode of what was going on.

---

[3] In her briefing, Simms also discusses defense counsel's failure to obtain an investigator earlier in the process and failure to identify and interview her co-actors "Mickey" and "Black" as additional instances of deficient performance. However, those omissions by counsel were not raised in Simms's motion for new trial and therefore cannot form part of the analysis of whether she was entitled to a hearing on her motion for new trial.

In addition, the trial court made handwritten notations on Simms's motion for new trial stating that her three medical conditions were listed in the presentence report and considered by the court. The court's notes marked next to Simms's discussion of her family member's good character evidence state that she had aggravated assault charges in Bexar and Nueces counties. Based on the trial court's comments and notations contained in the record, Simms's allegations of her counsel's deficient performance at the punishment phase do not suffice to raise reasonable grounds that she could have proven prejudice under *Strickland*.

## CONCLUSION

We conclude that, even assuming that Simms presented sufficient facts establishing reasonable grounds that her trial counsel's performance was deficient in the above respects, Simms's motion and supporting affidavits fail to allege sufficient facts to provide reasonable grounds to believe she could satisfy the prejudice prong of *Strickland*. *See Smith*, 286 S.W.3d at 342, 345. Therefore, the trial court did not abuse its discretion in failing to hold a hearing on Simms's motion for new trial. We therefore overrule Simms's issue on appeal and affirm the trial court's judgment.

Rebeca C. Martinez, Justice

DO NOT PUBLISH